NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0034n.06

No. 12-3095

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
***Jan 07, 2013***
DEBORAH S. HUNT, Clerk

AUTO-OWNERS INSURANCE COMPANY,      )
                                     )
    Plaintiff-Appellant,             )         ON APPEAL FROM THE
                                     )         UNITED STATES DISTRICT
    v.                               )         COURT FOR THE
                                     )         NORTHERN DISTRICT OF
ILLINOIS NATIONAL INSURANCE COMPANY, )         OHIO
                                     )
    Defendant-Appellee.              )
                                     )

BEFORE:  SUTTON, GRIFFIN, and WHITE, Circuit Judges.

GRIFFIN, Circuit Judge.

After plaintiff Auto-Owners Insurance Company defended and eventually settled claims brought against its insured, Adopt America Network, Inc., it filed this action seeking a declaration that defendant Illinois National Insurance Company, who also insured Adopt America, was required to contribute to the costs of defense, including the settlement amount.  The district court entered summary judgment in Illinois National's favor, finding that the insurer had no duty to defend Adopt America and thus no obligation to contribute to the defense.  We reverse and remand the case for further proceedings.

I.

Adopt America is a private adoption agency located in Ohio.  During the 1990s, it placed many foster children in the home of Michael and Sharen Gravelle, who allegedly forced children to

sleep in cage-like enclosures. Eventually, authorities discovered the abuse and removed the children from the Gravelle home on September 9, 2005.

Two allegedly abused children later sued Adopt America and others for negligence, claiming that the agency breached its duty of reasonable care to discover and report to authorities the ongoing abuse in the Gravelle home (the "*Torrence* action"). Auto-Owners assumed Adopt America's defense in the underlying lawsuit. Although Illinois National also insured Adopt America, it refused to defend its insured, claiming that its policy of insurance did not cover the allegations made in the *Torrence* complaint. The *Torrence* action eventually settled, and Auto-Owners paid the settlement on behalf of Adopt America. Auto-Owners then brought the present declaratory action seeking contribution from Illinois National for the settlement sum and defense costs. *See* 28 U.S.C. §§ 1332(a), 2201(a). On cross-motions for summary judgment, the district court ruled that Illinois National had no duty to defend its insured against the allegations asserted in the *Torrence* action and thus had no obligation to contribute. It therefore granted Illinois National's summary-judgment motion and entered judgment in its favor. Auto-Owners timely appealed.

II.

We review de novo a district court's entry of summary judgment. *King v. Taylor*, 694 F.3d 650, 661 (6th Cir. 2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We apply the substantive law of Ohio in this diversity action. 28 U.S.C. § 1652; *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

III.

A.

Auto-Owners seeks a declaration of its contribution rights against Illinois National in connection with the *Torrence* action. "Contribution is the right of a person who has been compelled to pay what another should have paid in part to require partial (usually proportionate) reimbursement." *Pa. Gen. Ins. Co. v. Park-Ohio Indus., Inc.*, 902 N.E.2d 53, 58 (Ohio Ct. App. 2008); *see also* 15 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 217:4 (3d ed. 2005) ("Where one of two or more potentially liable insurers pays a loss, whether in satisfaction of a judgment or in settlement of a claim, it may then seek payment from the other insurers of their fair share of the loss. . . . [T]he payment sought is referred to as a 'contribution.'"). Here, if Illinois National, as Adopt America's insurer, had a common duty to defend it in the *Torrence* litigation, Auto-Owners is entitled under equitable principles to recover from Illinois National a portion of the settlement sum and its defense costs.

In Ohio, "[t]he scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured." *Ohio Gov't Risk Mgmt. Plan v. Harrison*, 874 N.E.2d 1155, 1160 (Ohio 2007). It is an insurer's "absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy, even in part and even if the allegations are groundless, false, or fraudulent." *City of Sharonville v. Am. Emp'rs Ins. Co.*, 846 N.E.2d 833, 837 (Ohio 2006). If an insurer must defend against one claim in a complaint, it must defend against *all* claims in the complaint, even

those with no relation to policy coverage. *Id.* No duty to defend arises, however, where all alleged claims are "clearly and indisputably outside of the contracted policy coverage." *Id.* As we discuss below, all claims lodged against Adopt America in the *Torrence* complaint are not "clearly and indisputably outside" of Illinois National's policy. One claim is squarely covered.

The relevant policy language is contained in the "Abuse and Molestation Endorsement," which provides:

> We shall pay those amounts that the insured becomes legally obligated to pay as damages for bodily injury, mental injury, advertising injury or personal injury arising out of:
>
>> 1. Any abuse or molestation incident arising out of . . . Negligent:
>>
>>> a.  Employment;
>>> b.  Investigation;
>>> c.  Supervision;
>>> d.  *Reporting to the proper authorities, or failure to report*; or
>>> e.  Retention;
>>
>> of a person for whom the insured is or ever was legally responsible.
>
> The abuse or molestation incident must take place *on or after the retroactive date of this endorsement*, but before the end of the policy period and within the coverage territory. . . .

(Emphases added.) An "abuse or molestation incident" is "any actual or alleged negligent act, error, or omission resulting in abuse or molestation or threatened abuse or molestation." The Endorsement's retroactive date is April 11, 2005.

B.

The district court concluded that although the Endorsement covered the type of conduct alleged in the *Torrence* complaint—a conclusion Illinois National does not challenge on appeal—Illinois National had no duty to defend Adopt America because of *when* that conduct was alleged to have occurred. In the district court's words:

> The Endorsement definition of an "abuse or molestation incident" is not broad, but is limited to "any actual or alleged negligent act, error, or omission *resulting* in abuse or molestation." (Doc. No. 31-1 at 6) (emphasis added). Thus, the policy does not cover actual abuse—but does cover the failure to prevent abuse, exactly the allegation in *Torrence* against Adopt America. This then clears the first hurdle [in establishing coverage].
>
> However, Auto-Owners cannot clear the second hurdle. Adopt America's alleged failure in *Torrence* occurred in the 2002 and/or 2004 home inspections—well before the policy's effective date in April 2005. Any argument for a continuing violation carrying over into the covered period fails because the *Torrence* complaint only implicates the initial failure to discover or report the abuse. Such failures necessarily predate the 2005 retroactive date. Auto-Owners cannot stretch the *Torrence* complaint far enough to allow for coverage.

The district court was correct that the *Torrence* plaintiffs alleged conduct specifically covered by the Endorsement—a failure to report abuse. However, it incorrectly concluded that this omission predated the Endorsement's April 11, 2005, retroactive date.

The *Torrence* complaint[1] contains the following allegations:

---

[1]We can consider the *Torrence* complaint even though it is not part of our record. *See* Fed. R. Evid. 201(b), (d); *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) ("[Rule 201] applies to appellate courts taking judicial notice of facts supported by documents not included in the record on appeal."); *cf. E.I. Du Pont de Nemours & Co. v. Cullen*, 791 F.2d 5, 7 (1st Cir. 1986).

25. . . . Adopt America was responsible for placing one or more of the younger Children in the Gravelles' foster/adoptive care, and conducted "home studies" or other evaluations of the home prior thereto. During this evaluation and placement process, Adopt American *discovered* or should have discovered the Gravelles' history of abuse, *ongoing abuse*, and neglect Plaintiffs were subjected to, and *should have reported it to the proper authorities*.

* * *

45. Defendant Adopt America conducted or employed or contracted with certain John Doe Defendants to conduct a "home study" of the Gravelles in 2002 and/or 2004 to determine whether they should receive yet another adoptive child. At the time of these assessments, the Plaintiffs (and the other Children) were already being abused and neglected. This abuse included kenneling the children in cages. Adopt America's "home studies" *found* or should have found this mistreatment and reported it to the proper authorities, but Defendant Adopt America failed to do so.

* * *

82. [Adopt America] owed duties to Plaintiffs . . . to adequate[ly] investigat[e] . . . the condition of the Gravelle home to discover if there was ongoing abuse and neglect, *and to report the same to the appropriate authorities*.

83. [Adopt America] breached [its] duties by failing to investigate and/*or failing to report the ongoing abuse and neglect* of the Plaintiffs.

(*Torrence, et al. v. Thompson, et al.*, No. 09-cv-2724 (N.D. Ohio filed Nov. 23, 2009)) (emphases added).

These allegations reasonably state two theories of negligence by Adopt America: (1) failure *to discover* child abuse during home inspections and report it; and (2) failure *to report* ongoing child abuse *actually discovered* during home visits. Although any duty Adopt America had to discover abuse during the home visits in 2002 and 2004 (the first theory) may logically have ceased after the visits, its duty to report abuse actually discovered during these visits (the second theory) arguably

continued until the abuse stopped—*i.e.*, until the children were removed from the Gravelle home, which was well after the retroactive date and therefore within the coverage period. (The retroactive date is April 11, 2005; authorities removed the children from the home five months later, on September 9, 2005.) According to the complaint, failing to report the known abuse was a breach of that duty and continued into the coverage period. Illinois National offers no obvious legal basis, nor have we found any, for why a common-law duty to report discovered child abuse would cease before the abuse did. This claim against Adopt America falls within the Abuse and Molestation Endorsement, including its coverage period. Therefore, Illinois National had a duty to defend Adopt America in the *Torrence* litigation.

In its attempt to avoid this result, Illinois National mischaracterizes the *Torrence* complaint. According to Illinois National, the *Torrence* complaint alleges that Adopt America "had a duty *at the time it placed a child in the home* to report ongoing abuse *at that time*"; it points out that the complaint does not allege "an 'ongoing duty' to report abuse after [the] placement work was done." (Emphasis added.) Illinois National provides no record citation supporting this reading of the complaint, which is not surprising—the *Torrence* complaint *nowhere circumscribes* in a temporal sense the reporting duty Adopt America allegedly owed and breached. The purpose of the complaint was to give notice of the claim against the adoption agency. *Cf. City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 558 (Ohio 1984) ("Ohio has embraced notice pleading[.]"). Without any allegations suggesting otherwise, the complaint is reasonably read to allege a breach of a duty to report known, ongoing abuse, which duty lasted until the children were removed from

the home, five months after the policy's retroactive date. This pleaded theory falls squarely within Illinois National's Abuse and Molestation Endorsement.

C.

Taking a different tack, Illinois National offers alternative grounds for affirmance not considered by the district court. Because our review is de novo, we can affirm the entry of summary judgment on any preserved ground supported by the record, even one not considered below. *See Harchar v. United States (In re Harchar)*, 694 F.3d 639, 644 (6th Cir. 2012). Illinois National's alternative grounds for affirmance lack merit.

First, Illinois National argues that its Commercial General Liability coverage insuring agreement relating to Bodily Injury and Property Damage does not cover the allegations in the *Torrence* action. That might be true, but it is irrelevant, for that specific insuring agreement does not apply here; it has been displaced by the Abuse and Molestation Endorsement, which "modifies insurance provided under the [Commercial General Liability Coverage Part]." The Endorsement further explains that:

> For the purposes of this endorsement, Coverage A., Bodily Injury and Property Damage, and Coverage B., Advertising Injury and Personal Injury, are each amended by adding the following to the end of each insuring agreement *and the following shall be the **only** insuring agreement to apply to abuse or molestation incidents*.

(Emphasis added.) Therefore, Illinois National's reliance on the insuring agreement for Bodily Injury and Property Damage is misplaced so long as the allegations fall within the Endorsement's coverage provisions, which they do.

For similar reasons, also misplaced is Illinois National's reliance on the Commercial General Liability coverage's "Abuse or Molestation Exclusion." That exclusion operates to take away coverage for instances of abuse or molestation reasonably found to be covered by the insuring agreement relating to Bodily Injury and Property Damage. But again, this insuring agreement does not apply to "abuse or molestation incidents," incidents governed *exclusively* by the Abuse and Molestation Endorsement. If the insuring agreement for Bodily Injury and Property Damage does not apply, then neither does the Abuse or Molestation Exclusion, which works only to modify that specific insuring agreement. As the district court put it, the Endorsement "negates the exclusion." Illinois National points out that the Abuse and Molestation Endorsement "expressly does not change any other 'terms and conditions' of the policy," which logically includes the Abuse or Molestation Exclusion, thereby suggesting that the Exclusion still applies in cases where the Endorsement applies. Not so. Again, the Exclusion is part of the insuring agreement for Bodily Injury and Property Damage, which insuring agreement is entirely displaced by the Endorsement when it applies, as it does here.

Moreover, denying coverage for the reason that it is excluded by the Abuse or Molestation Exclusion (it is not) would render the Abuse and Molestation Endorsement illusory. *See Talbert v. Cont'l Cas. Co.*, 811 N.E.2d 1169, 1172 (Ohio Ct. App. 2004) ("Generally, courts disfavor contract interpretations which render contracts illusory[.]" (quotation marks omitted)); *cf. id.* at 1177 ("[W]e are not inclined to give the insurance policy a reading that would render it useless. Amcast paid a significant premium for this policy, and we fail to see what it paid for if it was not coverage for

substantial-certainty intentional torts. Therefore, we do not find Continental's argument persuasive."); *cf. also GNFH, Inc. v. W. Am. Ins. Co.*, 873 N.E.2d 345, 364 (Ohio Ct. App. 2007) ("[I]n the absence of an explanation why the insurance coverage offered in the endorsement is anything but illusory, we conclude that the exclusion for 'expected' injuries does not bar coverage for the alleged intentional torts in the present case.").

Finally, Illinois National points to the policy's Social Service Professional Liability coverage and argues that the allegations made against Adopt America in the *Torrence* action are expressly excluded from coverage under that provision. While that might be true, Professional Liability coverage and Commercial General Liability coverage are distinct, and exclusion from coverage under one does not appear to preclude coverage under the other—there are no cross-references between the two; the coverages contain their own sets of definitions, exclusions, and limitations on coverage; and the Professional Liability coverage portion repeatedly refers to itself as a distinct "policy." And for the same reason, Illinois National's assertion that coverage is limited here by the clause in the Professional Liability coverage portion stating that such insurance "will apply only in excess" of other insurance coverage is beside the point—the clause does not affect Commercial General Liability coverage.

IV.

In sum, we hold that Illinois National had a contractual duty to defend Adopt America in the *Torrence* action. Therefore, under Ohio law, *Pa. Gen. Ins. Co.*, 902 N.E.2d at 59, Illinois National must contribute to the costs borne by Auto-Owners. On remand, we direct the district court to

determine the proper contribution amount.  For these reasons, we reverse the judgment of the district

court and remand for proceedings consistent with this opinion.